DORE, Judge.
This is a suit for Workmen’s Compensation wherein plaintiff alleges that on June 30, 1948, he was employed by the defendant company as .a common laborer at its .plant in North Baton Rouge, in East Baton Rouge Parish; that while in the scope and performance of his regular duties, petitioner was working between 11:00 p. m. and 7:00 a. m., engaged in his regular work of burning and shoveling fuel into a burner, when smoke, ashes, lead and fumes .from *70 said burner were suddenly blown forcibly into 'his face, eyes, nose and mouth, causing' him to inhale said-smoke, ashes, fumes and lead, and other contents of said burner, and to be choked and strangled, and causing him to have to quit his work for a time. He alleges that as a result of this incident, that said smoke, fumes and ashes containing melted and burned lead and other poisonous gases, injured him internally and, particularly, his lungs and stomach, and that as a result, he has been, and is, totally disabled to do work of any reasonable character. He further alleges that immediately following the accident, as here-inabove set forth, as soon as he had somewhat overcome the strangling and choking, he notified his foreman that he was unable to work, but that he stayed on the job until 7:00 a. m. of August 1, 1948 at quitting time; and that he told the superintendent that he was sick and unable to work, and was given a slip to go to the office of Dr. Lorio, who treated petitioner for a period of about two weeks and then discharged him. He states that thereafter he continued to suffer and called upon Dr. Lawton, who examined him and ordered him to go to the Charity Hospital in New Orleans; that upon his return from said hospital, he was still disabled and was instructed by Dr. Lawton to go to Our Lady of the Lake Sanitarium, in Baton Rouge, where he remained as a result of his injuries, from August 23rd to September 3, 1948. He alleges that at all times since the accident and injuries received, he has been under the care and treatment of physicians and has been in Our Lady of' the Lake Sanitarium and in the Charity Hospital of New Orleans, and has made several trips to the Charity Hospital, and is still going at intervals, -as requested, to said hospital for treatment. He alleges, specifically, that as a .result of the accident and injuries received by him, he is short-winded and cannot walk fast and cannot talk for very long at. a time, and attributes all of said ailments to the alleged accident. He alleges that his employer has paid him compensation in the total sum of $280 and has since refused to pay any additional compensation; that he is entitled to 65 per cent of his' weekly wage of $39.60, that is, $25.74 per week for a period of 400 weeks, less a credit for the $280 heretofore paid, and for the further sum of $500 for medical expense.
The defendant admits that plaintiff was employed as alleged and that he reported to its superintendent, M. D. Buckley, on July 31, 1948, complaining of pains in his abdomen, and that Buckley referred him to Dr. C. A. Lorio of Baton Rouge, who treated him for a period of time. Defendant also admits on information and belief that plaintiff was examined by Dr. Lawton and was treated at Charity Hospital in New Orleans, and at Our Lady of the Lake Sanitarium in Baton Rouge, and further admits that plaintiff has been under the care and treatment of physicians and has been a patient at the aforesaid two hospitals, but defendant especially denies that the plaintiff suffered the alleged accident and alleged injuries. In effect, the defendant admits that plaintiff may have had some ailment, but denies that 'it was connected with any accident as alleged by him. Defendant further admits that the average weekly wage of plaintiff was the sum of ■ $39.60, and further admits that workmen’s compensation in the sum of $280 was paid to plaintiff by it.
After trial of the case, the trial judge, for written reasons assigned, rendered judgment in favor of the defendant and against the plaintiff, rejecting, denying and dismissing the plaintiff’s demands at his costs. Plaintiff has appealed.
Dr. Clarence A. Lorio testified that he examined plaintiff for employment on April 26, 1948, and that his examination was negative except that he had two fingers missing from the right hand from some previous sawmill accident; that the next time he saw plaintiff was on July 31, 1949, when he came to his office and stated that he had abdominal cramps. He does not remember whether he gave any history of having inhaled furnace fumes of any kind. He states that he didn’t have any signs of any kind whereby he could state that he had been burned or had enough smoke to affect his eye membranes, nor his respiratory process; that he merely com *71 plained of abdominal colic. Dr. Lorio states that his records show that he treated him at his office on July 31st and August 2nd, 6th, 10th, 13th, 16th, 18th and 21st, and that on the 23rd, he sent him to the hospital and kept him up there a while, and that he had Dr. LaNasa go over him in an attempt to find if there was anything really the matter with him; that after he left the hospital, he kept him under continuous observation until November 12th, at which time he thought that he could no longer continue him receiving compensation because he felt he should be at work. Dr. Lorio, in fact, states that he felt he should be at work all along, but he gave him the benefit of the doubt and kept him on compensation until November 15th. Upon being questioned by the Court as to whether he would call him a neurotic or a malingerer, he stated, “I don’t think he is a neurotic. I think he is a straight out and out malingerer. I allowed him to collect insurance two months trying to get him back to work. I made Schuylkill Products pay him two months trying to get him .back to work.”
We also have the testimony of Dr. Daniel J. Fourrier, who examined plaintiff for the first time on January 23, 1949. His conclusion was that he found no objective symptoms of disabilty, and that the only symptoms that he was unable to work were subjective symptoms as were related to him by plaintiff and by plaintiff’s wife.
In addition to the testimony based on examination of plaintiff by Dr. Lorio and Dr. Fourrier, we have the testimony of Dr. Robert A. Kehoe, a recognized authority on lead poisoning, who testified that from his examination of urine specimens and blood specimens of the plaintiff, he found no signs of lead poisoning. He states, in effect, that it is possible that plaintiff could have been exposed to an undue amount of lead on or about July 30, 1948, but if so, he had fully recovered from such exposure on or before September 7, 1948.
We are in full accord with the trial judge in his statement, as follows: “It is wholly unnecessary to review the medical testimony pertaining to lead poisoning. It sufficeth to say that the testimony of Dr. Robert A. Kehoe, a recognized authority on this subject, leads to the conclusion that plaintiff does not now suffer from such an ailment, and that if he ever did, the same no longer exists.”
As to the actual occurrence of the accident, the testimony in support of plaintiff’s claim is based on his own statement that while putting material into a furnace, it suddenly “bushed out like someone using a firecracker.” In other words, there was an explosion of some kind, and that as a result, the ashes and smoke were thrown ..into his face and affected his nose, eyes and mouth. He admits, however, that he was wearing goggles and a nose protector, .and it is difficult to see how that material could have been thrown with such force as to cause damage to his nose, eyes and mouth. He states that he suffered burns, but strange to relate, they were not present when Dr. Lorio examined 'him. He also states that as a result of his experience he developed a stomach-ache, and also, that he had bad dreams and suffered continuously thereafter. His testimony is. corroborated to some extent by a fellow-employee, Amos Brown. This witness, however, upon being questioned by the Court, admitted that plaintiff’s face was. not burned as a result of the alleged accident.
The evidence is not convincing that plaintiff suffered any serious accident, but as stated by the trial court;
“Assuming however that plaintiff did experience a sudden explosion causing ashes, fumes and smoke to fly in his face, the question is, how could that occurrence cause his alleged disability? Having ruled out the possibility of lead poisoning, the medical doctors are unable to trace any causal connection between the accident and his alleged condition. If this be true, it would be merely a guess if the Court attempted to attribute his alleged ailments to the accident.
“There is no evidence of a respiratory condition caused ¡by inhaling of gas, smoke or ashes, nor is there anything upon which the Court could reach the conclusion that the accident has produced the disability alleged except the testimony of the plaintiff *72 and his wife that before the accident he was well' and strong and now he is too 'weak to work.
“The fact that Dr. Lorio recommended the payment of compensation for 14 weeks, in my opinion, means nothing except that for that period of time plaintiff continued to complain of pain and.the doctor out of an abundance of precaution tried to find a substantial basis for such complaint. Finally, failing to do so he discharged the patient and the compensation was stopped.
■ “I have read all of the medical testimony in the case and fail to find anything there to warrant a finding that the plaintiff is disabled, or if he is disabled, the same is attributable to the alleged accident.- Dr. Lorio expressed the view that ■ plaintiff- is an out and out malingerer. Whether this conclusion is correct or not, I do not believe that the plaintiff has proved his case with any degree of certainty.
“As has -been frequently held by the Courts, a claimant in workmen’s compensation proceedings must prove his case with the .same degree of certainty required in other civil suits.”
We can find no manifest error in the conclusions of the trial judge, and therefore the judgment is affirmed.